### 17536

Broadus S. GODFREY, Respondent, v. MILLS MILL NO. 2 (Reeves Brothers, Inc.) and Aetna Casualty and Surety Company, Insurance Carrier, Appellants

(108 S. E. (2d) 832)

*Messrs. Carlisle, Brown & Carlisle,* of Spartanburg, *for Appellants,*

*Messrs. Johnson & Smith,* of Spartanburg, *for Respondent,*

May 18, 1959.

TAYLOR, Justice.

This is a Workmen's Compensation Case and companion to 108 S. E. (2d) 587, filed May 11, 1959.

On April 19, 1956, claimant, Broadus Godfrey, a carpenter sustained a back injury, which arose out of and in the course of his employment, when he fell from a ladder. The injury was accepted as compensable, and an agreement be-

tween employer and employee was entered into, May 2, 1956, and filed with the South Carolina Industrial Commission on May 8, 1956, providing compensation for temporary total disability beginning April 27, 1956, and continuing "through necessary weeks; (or) for the period of total disability not to exceed the provisions of the Act." Such payments along with doctors' bills and hospital bills were paid by the Carrier-Appellant until March 20, 1957, when claimant signed the usual settlement receipt, denominated "Final Compensation Settlement Receipt," acknowledging "final settlement and satisfaction of all claims for compensation due under Compensation Agreement or Award, subject to review as provided by law"; and payments were stopped. On April 3, 1957, the Industrial Commission's Form 18 was filed showing the amount of compensation and medical payments, with the word "Closed" stamped across the front. On November 7, 1957, claimant's attorney inquired of the Industrial Commission as to "the nature of the paper signed by Mr. Godfrey on March 20, 1957." Subsequently, on November 20, 1957, claimant's attorney wrote the Industrial Commission seeking to have the matter reopened. On December 16, 1957, the Commission issued its notice of hearing "to determine whether or not the defendants have the right to permanently stop payment of compensation ordered under Award No. 5246; and if so, to determine entitlement to further medical benefits, the nature and extent of any causally related disability and disfigurement; and to consider any other questions which might arise under the law. * * *"

The matter came on for hearing before the Honorable James J. Reid, Hearing Commissioner, at which time the following transpired:

"Commissioner Reid: * * * The question of this hearing, gentlemen, is to determine whether or not the defendants have the right to permanently stop payment of compensation ordered under Award No. 5246; and if so, to determine entitlement to further medical benefits, the nature and extent of any causally related disability and disfigurement; and to

consider any other questions which might arise under the Law. We, of necessity, take judicial notice of the Industrial Commission's records as they pertain to this case, and particularly declare as evidence of record the documents and papers supporting this is an accepted accidental injury within the meaning of the Law by agreement between the parties and approved by the Commission in its Award No. 5246 of May 9, 1956, and that the injury involved is to the back. In addition to that, Mr. Hertz Brown, do you have any admissions to make on behalf of the defendants?

"Mr. Brown: I don't think so, Mr. Commissioner, at this time.

"Commissioner Reid: Have you stopped the payments of compensation?

"Mr. Brown: Yes, sir.

"Commissioner Reid: Could you tell us what date and why?

"Mr. Brown: He has been paid temporary total through March 21, 1957, and based on the doctor's report that he had accomplished maximum improvement from the injury, the payments were stopped.

"Commissioner Reid: I understand you have paid no compensation since March 22, 1957?

"Mr. Brown: That's correct. On March 25, 1957, the doctor certified that he had recovered without any permanent injury, and on March 20, 1957, final compensation settlement receipt was procured in which he stated he returned to work on March 22, 1957.

"Commissioner Reid: All right, sir; you take the position that total disability had ceased on March 20, 1957?

"Mr. Brown: March 21st.

"Commissioner Reid: March 21, 1957. That's right, isn't it? You take that position?

"Mr. Brown: Yes, sir, that's correct.

"Commissioner Reid: And there was no further disability after that date?

"Mr. Brown: Not resulting from the accident.

"Commissioner Reid: All right, sir; in the absence of any filing with the Commission of Form 17 showing that the man actually returned to work, and in the absence of any Form 21, application for permission to stop payment of compensation, approved by appropriate order of the Commission, the burden is on the defendants to show that total disability had ceased which would render the existing award ineffective. So we will start and hear the defendants first."

After further discussion between counsel and the Commissioner with respect to matters with which we are not here concerned, Appellants' witnesses were sworn and examined.

Appellants now complain of the Hearing Commissioner's ruling that, by reason of Appellants' failure to file with the Commission Form 17, showing that the claimant actually returned to work, and Form 21, seeking permission to stop payment, they must carry the burden to show that total disability had ceased. A review of the proceedings heretofore stated does not disclose that such contention was made at the time, but Appellants in their brief take the position that Sec. 72-359, Code of Laws of South Carolina, 1952, and Rule 12 of the South Carolina Industrial Commission is not applicable in instant case because of the release and that claimant, in order to prevail, must affirmatively show a change in condition; yet at the same time they state: "Defendants emphasize that they have not taken the position in this case, that the Final Receipt signed by claimant bars his right to consideration of claims for causally related permanent disability or disfigurement, if any." This statement makes it unnecessary for us to discuss or decide the effect of the Final Receipt.

By reason of claimant having received a fracture of the 12th dorsal and 1st lumbar vertebras while about his work as a carpenter, a stipulation was entered into providing for *temporary total* disability. The evidence adduced at the hearing in question reveals that at the time Appellants contend

total disability had ceased (March, 1957), claimant was advised to "seek some type of work" as is evidenced by the testimony of one of Appellants' witnesses, Dr. Frank H. Stelling. "* * * I told him that he could try to get back to some type of work." Dr. Stelling further testified, "I think he has reached maximum benefits from treatment and will probably have to use a brace of some sort for the rest of his life. I doubt that he will be able to do heavy work," and that the $x$-rays made in January, 1958, showed no visible change in the arthritic condition from those made earlier. Dr. B. J. Workman, another witness for Appellants, testified that he knew claimant well; that he was straightforward and stood for the right things; that he has always been a well established man in his community and highly thought of, has always been very thrifty and worked; that since his injury he wears a "pretty heavy brace" to support his back; and that he does not believe he is malingering. Further, he states, "I feel that Mr. Godfrey has had a maximum healing of his fractures but he does have a tremendous amount of arthritic changes in his entire lumbar area, which in his opinion was aggravated by the fractures, and as of January, 1958, he was suffering physical impairment with a loss of back motion with pain in the area." Although the release signed by claimant, stated that he had returned to work, there is no evidence that he did in fact do so, and Appellants do not so contend.

From the testimony of Appellants' witnesses and the evidence made a part of this record, it is apparent that claimant has been totally disabled from the date of his injury and such total disability has continued since. In fact, there is no testimony to the contrary. Were it otherwise, we would be inclined to consider more seriously Appellants' contention that claimant should have been required to affirmatively show a change of condition in order to prevail, as in *Cole v. State Highway Department,* 190 S. C. 142, 2 S. E. (2d) 490, and *Wallace v. Campbell Limestone Co.,* 198 S. C. 196, 17 S. E. (2d) 309; but where the evidence as here is susceptible of only one conclusion and that is that claimant's disability

which was stipulated has continued without interruption since his injury it would be substituting form for matter to remand the case for rehearing.

In instant case, Respondent presented no witnesses but elected to stand upon the testimony of Appellants' witnesses, and the record as made, which in our opinion is sufficient to sustain the findings of fact as determined by the Industrial Commission. The Order appealed from should, therefore, be affirmed and It Is So Ordered. Affirmed.

STUKES, C. J., and OXNER, LEGGE and MOSS, JJ., concur.